IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KERRY KEITH LONG, | ) | CV. NO. 10-00046 DAE/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JP MORGAN CHASE BANK, | ) | |
| NATIONAL ASSOCIATION, | ) | |
| WASHINGTON MUTUAL BANK; | ) | |
| DOES 1 through 20, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER (1) DISMISSING COMPLAINT AND
(2) GRANTING LEAVE TO AMEND

On January 17, 2012, the Court heard Defendant JP Morgan Chase

Bank, National Association's ("Chase") Motion for Summary Judgment

("Motion").  (Doc. # 46.)  Robin Horner, Esq., did not attend the hearing on behalf

of Plaintiff Kerry Keith Long ("Plaintiff"); David A. Gruebner, Esq., appeared on

behalf of Defendant.  After reviewing the Motion and the supporting

memorandum, the Court **DISMISSES** the Complaint and **GRANTS** Plaintiff leave

to amend.

## BACKGROUND

I.   Factual Background

The instant action stems primarily out of a Mortgage and Promissory Note executed by Plaintiff to purchase a home located at 15-1929 33rd Avenue, Keaʻau, Hawaiʻi, 96749 (the "Subject Property").  (See "Compl.," Doc. # 1, ¶ 6.)

Plaintiff obtained the home loan from Defendant Washington Mutual Bank ("WaMu"), and a Mortgage and Note pertaining to the loan was recorded on or about March 21, 2007.  ("CSF," Doc. # 47, ¶ 2; see Compl. ¶ 9.)  On September 25, 2008, the United States Office of Thrift Supervision seized WaMu from Washington Mutual, Inc. and placed it into the receivership of the Federal Deposit Insurance Corporation ("FDIC") for liquidation.  (CSF ¶ 4.)  On the same day, the FDIC sold the assets and certain liabilities to Chase pursuant to a "Purchase and Assumption Agreement" ("P & A Agreement").  (Id. ¶ 5.)  The Agreement provides, in relevant part:

2.5  Borrower Claims.  Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with

a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

(CSF Ex. B ¶ 2.5.)[1]  Chase assumed Plaintiff's Mortgage and Note as part of its

purchase of certain WaMu assets pursuant to the Agreement.  (CSF ¶ 6.)

Chase asserts that Plaintiff is delinquent in his mortgage payments.

(Id. ¶ 8.)  Chase cancelled a nonjudicial foreclosure sale on the Subject Property

and postponed foreclosure action when Plaintiff filed his Complaint.  (Id. ¶ 9.)

II.   Procedural Background

On January 25, 2010, Plaintiff filed his Complaint with this Court.

("Compl," Doc. # 1.)  Plaintiff alleges the following claims: (1) "Unfair Trade

Practices Involving Non Compliance, Under 15 U.S.C. Sections 1802, et. seq." (Id.

¶¶ 24–28); (2) "Failure to Obtain Signed Loan Documents in Violation of 15

U.S.C. Sec. 1601, et. seq. and Title 12, Regulation Z Part 226, e[t]. seq." (Id.

¶¶ 29–33); (3) "Failure to Give Conspicuous Writings in Violation of 15 U.S.C.

Sec. 1601, et. seq. and Title 12 of Federal Regulations Sec. 226.18" (Id. ¶¶ 34–38);

(4) Unfair and Deceptive Acts and Practices in violation of Hawai'i Revised

---

[1]  The Court takes judicial notice of the P & A Agreement, as it is readily available on the FDIC's website and "[j]udicial notice may be taken of documents available on government websites."  Jarvis v. JP Morgan Chase Bank, N.A., 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010) (citing Laborers' Pension Fund v. Blackmore Sewer Constr., Inc., 298 F.3d 600, 607 (7th Cir. 2002)).

Statutes Chapter 480 (Id. ¶¶ 39–43); (5) Injunctive Relief (Id. ¶¶ 44-45); (6)

Breach of Implied Covenant of Good Faith and Fair Dealing (Id. ¶¶ 46–47); (7)

Promissory Estoppel (Id. ¶¶ 48–49); (8) Equitable Estoppel (Id. ¶¶ 50–51); and (9)

Intentional Infliction of Emotional Distress (Id. ¶¶ 52–53).

On December 5, 2011, Defendant filed the instant Motion for

Summary Judgment ("Motion").  ("Mot.," Doc. # 46.)  On the same day,

Defendant also filed a Concise Statement in Support of its Motion.  ("CSF," Doc.

# 47.)  Plaintiff has not filed an opposition to Defendant's Motion.

## STANDARD OF REVIEW

A.      Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court

may dismiss claims over which it lacks subject matter jurisdiction.  In a motion to

dismiss for lack of subject matter jurisdiction, the plaintiff bears the initial burden

of proving that subject matter jurisdiction exists.  Robinson v. United States, 586

F.3d 683, 685 (9th Cir. 2009); Rattlesnake Coalition v. U.S. Env't Prot. Agency,

509 F.3d 1095, 1102 n.1 (9th Cir. 2007).  "In considering the jurisdiction

questions, it should be remembered that 'it is a fundamental principle that federal

courts are courts of limited jurisdiction.'" Stock West, Inc. v. Confederated Tribes

of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting Owen

4

Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)).  Upon a motion to

dismiss, a party may make a jurisdictional attack that is either facial or factual.

Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial

attack occurs when the movant "asserts that the allegations contained in a

complaint are insufficient on their face to invoke federal jurisdiction."  Id.  By

contrast, a factual attack occurs when the movant "disputes the truth of the

allegations, that by themselves, would otherwise invoke federal jurisdiction."  Id.

Where the movant makes a factual attack on jurisdiction, the court

may review evidence beyond the complaint.  See Savage v. Glendale Union High

Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In resolving an attack on the facts,

a court may weigh evidence to determine whether it has jurisdiction, as long as the

jurisdictional facts are not intertwined with the merits.  Rosales v. United States,

824 F.2d 799, 803 (9th Cir. 1987) (holding jurisdictional facts as to date of accrual

of medical malpractice claim were intertwined with factual findings of onset of

medical ailment).  In such circumstances, "no presumptive truthfulness attaches to

plaintiff's allegations, and the existence of disputed facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims."  Thornhill

Publ'g Co., Inc. v. Gen. Tel.& Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

"Once the moving party has converted the motion to dismiss into a factual motion

by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.2.

B.      Summary Judgment

Federal Rule of Civil Procedure ("Rule") 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden

initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence' " must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134. Further, the Ninth Circuit has

"refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. <u>Porter</u>, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. <u>Id.</u>; <u>see also</u> <u>Nelson v. City of Davis</u>, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

III.    Rules  8 and 12

   The court may dismiss a complaint pursuant to Federal Rule of Civil

Procedure ("Rule") 12(b)(6) on its own motion.  See Omar v. Sea-Land Serv., Inc.,

813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte

under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the

claimant cannot possibly win relief."); Ricotta v. California, 4 F. Supp. 2d 961, 968

n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim sua sponte for a Defendant

who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); see also

Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding

that district court may dismiss cases sua sponte pursuant to Rule 12(b)(6) without

notice where plaintiff could not prevail on complaint as alleged).  Additionally, a

paid complaint that is "obviously frivolous" does not confer federal subject matter

jurisdiction and may be dismissed sua sponte before service of process.  Franklin v.

Murphy, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984); see also Fed. R. Civ. P.

12(h)(3); Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004)

("[I]t is the obligation of both district court and counsel to be alert to jurisdictional

requirements."); Branson v. Nott, 62 F.3d 287, 291 (9th Cir. 1995) ("[D]ismissal of

Branson's complaint was required because the district court lacked subject matter

jurisdiction . . . .").

The court may also <u>sua sponte</u> dismiss a complaint for failure to comply with Federal Rule of Civil Procedure ("Rule") 8.  Rule 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed <u>sua sponte</u> for failure to satisfy Rule 8.  <u>Hearns v. San Bernardino Police Dep't</u>, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting <u>Gillibeau v. City of Richmond</u>, 417 F.2d 426, 431 (9th Cir. 1969); <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995) (stating that a district court has the power to <u>sua sponte</u> dismiss a complaint for failure to comply with Rule 8 where the complaint is so confused, ambiguous, or unintelligible that its true substance is well disguised); <u>see also</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); <u>Nevijel v. N. Coast Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendants fair notice of

the wrongs they have allegedly committed.  See McHenry, 84 F.3d at 1178–80

(affirming dismissal of complaint where "one cannot determine from the complaint

who is being sued, for what relief, and on what theory, with enough detail to guide

discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n.4

(9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint

provide[d] fair notice of the wrongs allegedly committed by defendants and [did]

not qualify as overly verbose, confusing, or rambling").  Rule 8 requires more than

"the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action

will not do."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations and

quotations omitted).  "The propriety of dismissal for failure to comply with Rule 8

does not depend on whether the complaint is wholly without merit."  McHenry, 84

F.3d at 1179.

   The court may "begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 129

S. Ct. at 1950.  Legal conclusions must be supported by factual allegations.  Id.

"When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to

relief."  Id.

11

## DISCUSSION

I.    Subject Matter Jurisdiction

Chase argues that this Court lacks subject matter jurisdiction over Plaintiff's claims against it because they relate to the alleged acts and omissions of WaMu pertaining to the origination of the loan before WaMu failed and was taken over by the FDIC.  (Doc. # 46-1 at 8–9.)  Chase asserts that such claims must first be brought under the administrative claims process mandated by the Federal Institutions Reform, Recovery and Enforcement Act ("FIRREA"), and that the Court therefore lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies.  (Doc. # 46 at 2; Doc. # 46-1 at 8–9.)  To the extent that Chase seeks a dismissal of Plaintiff's claims for lack of subject matter jurisdiction, the Court treats Chase's motion for summary judgment as a motion to dismiss under Rule 12(b)(1).

FIRREA sets out a mandatory administrative process for claims against a failed depository institution that is in FDIC receivership; "[n]o court has jurisdiction over the claim until the exhaustion of this administrative process." Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1282 (9th Cir. 1994).  The administrative process "'allow[s] the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts.'"

12

Henderson v. Bank of New England, 986 F.2d 319, 320 (9th Cir. 1993) (quoting

H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., reprinted in 1989 U.S.C.C.A.N.

87, 215).  Specifically, 12 U.S.C. § 1281(d)(13)(D) provides:

> Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have
> jurisdiction over--
>
> (i) any claim or action for payment from, or any action seeking a
> determination of rights with respect to, the assets of any depository
> institution for which the Corporation has been appointed receiver, including
> assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the
> Corporation as receiver.

Thus, the statute "strips all courts of jurisdiction over claims made

outside the administrative procedures of section 1821."  Intercontinental Travel

Mktg, 45 F.3d at 1282 (quoting Meliezer v. Resolution Trust Corp., 952 F.2d 879,

882 (5th Cir. 1992)).  In other words, section 1821 "bars judicial review of any

non-exhausted claim, monetary or nonmonetary, which is 'susceptible of resolution

through the claims procedure.'" Henderson, 986 F.2d at 321 (quoting Rosa v.

Resolution Trust Corp., 938 F.2d 383, 394 (3d Cir. 1991)).

Courts have applied this jurisdictional bar to claims against not only

failed banks and the FDIC, but to entities that acquired the assets of the failed

institution from the FDIC.  See Caires v. JP Morgan Chase Bank, 745 F. Supp. 2d

13

40, 50 (D. Conn. 2010); <u>Rockwell v. Chase Bank</u>, 2011 WL 2292353 (W.D. Wash. June 7, 2011) (holding that to the extent plaintiff's claims against Chase are "based on WaMu's pre-receivership acts or omissions, they are dismissed with prejudice for lack of subject matter jurisdiction"); <u>Rundgren v. Wash. Mut. Bank, F.A.</u>, Cv. No. 09-00495 JMS/KSC, 2010 WL 4960513 (D. Haw. Nov. 30, 2010) ("[T]o the extent that Plaintiffs allege claims against Chase for WaMu's conduct, liability for those claims remain with the FDIC and are therefore subject to FIRREA's administrative claims process."); <u>Benson v. JPMorgan Chase Bank, N.A.</u>, 2010 WL 3168390 (N.D. Calif. Aug. 10, 2010) (holding that the court lacked subject matter jurisdiction over claims against Chase because they relate to WaMu's conduct).

Here, Plaintiff's Complaint does not allege that he exhausted the administrative claims process. Plaintiff's Complaint does not distinguish between Defendants Chase, WaMu or "Doe Defendants" and routinely names all Defendants in the allegations. However, as stated above and according to a declaration submitted by Chase, Plaintiff's Note and Mortgage originated with WaMu and Chase assumed the loan as part of its purchase of certain WaMu assets on September 25, 2008. ("Brooks Decl.," Doc. # 47-2, ¶¶ 4–5.) Taking into account the declaration, it appears that most of Plaintiff's claims against Chase are

14

based on alleged misconduct by WaMu.  Thus, to the extent that Plaintiff alleges

claims against Chase for WaMu's conduct, those claims are subject to FIRREA's

administrative process and the Court does not have jurisdiction over them.

        The Court finds, however, that to the extent that Plaintiff alleges a

Truth in Lending Act ("TILA") claim for rescission, the Court has subject matter

jurisdiction over this claim.   A TILA rescission claim may be brought "against any

assignee of the obligation."  15 U.S.C. § 1641(c).  Here, Chase, which acquired the

assets of WaMu from the FDIC, is a current assignee of the mortgage loan.  Any

remedy of rescission Plaintiff may have must be invoked against the current holder

of the mortgage loan.  See Rundgren v. Wash. Mut. Bank, 2010 WL 4960513, at

*6 (D. Haw. Nov. 30, 2010) (holding that the court has subject matter jurisdiction

over plaintiffs' TILA claim for rescission, reasoning that "[t]o find otherwise

would mean that Plaintiffs must seek rescission through the administrative

FIRREA process against the FDIC even though Chase, and not the FDIC, holds the

mortgage.  Such requirement would serve no purpose but to frustrate the borrower

in seeking relief."); King v. Long Beach Mortg. Co., 672 F. Supp. 2d 238, 246–47

(D. Mass. 2009) ("Rescission in the TILA context, as envisaged by Congress, is a

private and mutual process involving both the consumer and the creditor 'working

out the logistics' of returning any property, monies and financial charges. . . .

15

Rescission, therefore, only makes sense if exercised by the consumer . . . against the current creditor . . . .") (internal citations omitted).

Therefore, the Court DISMISSES Plaintiff's claims for lack of subject matter jurisdiction to the extent that they are based on WaMu's conduct, except for Plaintiff's TILA rescission claim.

II.   P & A Agreement

Alternatively, even if the Court has subject matter jurisdiction over Plaintiff's claims relating to WaMu's alleged misconduct, these claims (except for Plaintiff's TILA rescission claim, discussed below) would fail because pursuant to the P & A Agreement, Chase assumed only the assets – not the liabilities – regarding the mortgage loan.

Again, the P & A Agreement provides, in relevant part:

2.5  Borrower Claims.  Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in

16

connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

(CSF Ex. B ¶ 2.5.)

Courts have found that Article 2.5 of the P & A Agreement "relieves Chase of liability for borrowers' claims against Washington Mutual." McCann v. Quality Loan Serv. Corp., 729 F. Supp. 2d 1238, 1241 (W.D. Wash. 2010). The rationale is that Chase succeeded WaMu through execution of the P & A Agreement, which "governs the status of Chase as successor; and Article 2.5 of the P & A Agreement establishes that Chase did not assume liability for borrowers' claims related to loans made by Washington Mutual prior to September 25, 2008." Id. See also Gossen v. JPMorgan Chase Bank, --- F. Supp. 2d ---, 2011 WL 4939828, at *4 (W.D. Wash. Oct. 18, 2011) (holding that plaintiffs' causes of action based on WaMu's conduct in the origination of the loan are subject to dismissal); Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 960 (N.D. Cal. 2010) (stating that plaintiff's claims must be brought against the FDIC rather than Chase). Courts have also found that the P & A Agreement allows for claims based on Chase's conduct that occurred after September 25, 2008. See McCann, 729 F. Supp. 2d at 1242–43; Jones-Boyle v. Wash. Mut. Bank, FA, 2010 WL 2724287, at *8 (N.D. Cal. July 8, 2010).

The Court finds, however, that to the extent that Plaintiff seeks rescission under TILA, that claim is not barred by the P & A Agreement. However, as discussed below, the Court finds that Plaintiff has failed to properly state a claim for rescission.

Courts have not uniformly determined the P & A Agreement's effect on a borrower's claim for rescission under TILA.  See Rundgren, 2010 WL 4960513, at *6 (reviewing cases that have addressed the effect of the P & A Agreement on TILA rescission claims).  A few courts have dismissed the rescission claim along with the other claims.  See Rosenfeld v. JPMorgan Chase Bank, 732 F. Supp. 2d 952, 960 (N.D. Cal. 2010).  Other courts have dismissed rescission claims based on alternative grounds.  See Rundgren, 2010 WL 4960513, at *6 (collecting cases); Jones–Boyle v. Wash. Mut. Bank, 2010 WL 2724287, at *9 (N.D. Cal. July 8, 2010) (rejecting that the P & A Agreement barred plaintiff's rescission claims, but dismissing claim on another ground).

Finally, another group of courts have retained the rescission claim, explaining that the P & A Agreement does not shield a subsequent purchaser like Chase from a rescission claim because "TILA's rescission remedy is exercisable against the holder of the asset, not the retainer of the liability."  Danilyuk v. JP Morgan Chase Bank, N.A., 2010 WL 2679843, at *5 (W.D. Wash. July 2, 2010)

(quoting King, 672 F. Supp. 2d at 246); see also Rundgren, 2010 WL 4960513, at *7 (discussing cases and dismissing all claims except plaintiffs' TILA rescission claims). King emphasized that TILA states that any consumer with the right to rescind "may rescind the transaction as against any assignee of the obligation." King, 672 F. Supp. 2d at 248 (citing 15 U.S.C. § 1641(c) (emphasis added). The court noted the ordinary meaning of the word "assignment" and reasoned that "[j]ust because liabilities are retained by the transferor does not mean the transferee is not an assignee.  Under TILA, it is the assignee who is subject to the consumer's statutory right to rescind the loan transaction." Id.  The King court stated that because Chase had acquired the rights to the loan transaction, Chase was an assignee for purposes of TILA.  Id.  The King court further reasoned that "TILA refers to the consumer's right to rescind as 'his right to rescind.'  A right belonging to the consumer ought not to be extinguishable by a contract between the original assignee of the mortgage (FDIC) and its subsequent acquirer (Chase), without the consumer's consent or input." Id. (internal citation omitted).

The Court agrees with those courts that have found that a borrower may allege a rescission claim against Chase, as to find otherwise would be "contrary to Congressional intent."[2]  See id.

III.    Claims Against Chase

The Court notes that the Complaint largely suffers from pleading deficiencies such that, even assuming that the Court has jurisdiction over Plaintiff's claims, they fail to state a claim under Rule 12(b)(6).  To the extent that

---

[2] Chase, in a footnote, argues that 12 U.S.C. § 1821(j) has been interpreted as "preventing a court from granting a remedy of rescission because rescission is a 'judicial restraint' like an injunction, citing In Re Shirk, 2010 Bankr. LEXIS 3231, at *18 (S.D. Ohio Sept. 30, 2010).  (Mot. at XX, n.3.)  Section 1821(j) provides: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation [FDIC] as a conservator or a receiver."  Shirk, however, an Ohio bankruptcy case, is unpersuasive in large part because to support its proposition that section 1821(j) bars rescission, it cites one case that is distinguishable from the instant action and another case that appears to reject the proposition.  In Freeman v. FDIC, 56 F.3d 1394 (D.C. Cir. 1995), the court discussed section 1821(j)'s restraint on the FDIC, not on subsequent purchasers.  Jones-Boyle, 2010 WL 2724287, at *6–7, rejected the argument that the P & A Agreement bars rescission, stating in part that section 1821(j) "bars the remedy of rescission judicially imposed on the FDIC, but as the FDIC makes clear 'FDIC no longer holds Plaintiff's loan.'"

20

Plaintiff's claims may relate to Chase's conduct following September 25, 2008, the

Court sua sponte DISMISSES these claims without prejudice.[3]

A.    Count 1:  Unfair Trade Practices

Count 1 alleges "unfair trade practices involving non-compliance

under 15 USC sections 1802, et seq."  Count 1 fails to state a claim because the

federal statute Plaintiff cites, 15 U.S.C. § 1802 et seq., is inapplicable—it is found

in the chapter of the United States Code governing newspaper preservation.

Plaintiff has not pled sufficient facts to explain its relevance to this action.  Thus,

Count 1 can be dismissed on this basis alone.

B.    Counts 2 and 3:  TILA

Count 2 alleges that Defendants failed to give required notice in

various loan documents and to have said documents signed by Plaintiff as required

by 15 U.S.C. § 1601 et seq. and Regulation Z, 12 C.F.R. Part 226, et seq.  (Compl.

---

[3] The Complaint also makes general references to the Real Estate Settlement Procedures Act, the Equal Credit Opportunity Act, the Gramm, Leach, Bliley Act, and the Fair and Accurate Credit Transactions Act. (See Compl. ¶ 10.)  Plaintiff asserts no claims for relief ( i.e., no Counts) for any alleged violations of those federal laws.  Accordingly, the court construes the Complaint as not alleging any actual claims for violations of these statutes.  Cf. Bautista v. Los Angeles Cnty., 216 F.3d 837, 840–41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).

¶ 30.)  Count 3 alleges that Defendants have "failed to make the disclosures required by 15 U.S.C. 1601 et seq." and 12 C.F.R. § 226.18.[4]

As discussed above, Plaintiff's TILA rescission claim is not barred by the P & A Agreement as to Chase.  However, the Court nonetheless finds that Plaintiff has failed to state a claim for rescission.

Chase argues that to the extent that Plaintiff seeks rescission as a remedy, Plaintiff's claim should be dismissed in part because "Plaintiff has not tendered the loan principal to Chase or otherwise demonstrated an ability to tender payment of the net loan proceeds received under the subject loan."[5]  (Mot. at 10-11.)

The Court has "the discretion to condition rescission on tender by the borrower of the property he had received from the lender."  Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003).  The exercise of that discretion depends on "the equities present in a particular case, as well as consideration of the

_____

[4] The heading to Count 3 in Plaintiff's Complaint cited "Title 12 of Federal Regulations, Sec. 226.18," but paragraph 35 in Count 3 refers to "Title 2 Code of Federal Regulations, Sec. 226.18."  The Court construes the allegation as referring Regulation Z, § 226.18.

[5] Although Chase labels its Motion as one for summary judgment, the Court construes it as to this argument as a motion to dismiss.

legislative policy of full disclosure that underlies the Truth in Lending Act and the

remedial-penal nature of the private enforcement provisions of the Act."  Id.

District courts have been split on whether a plaintiff is required to

plead an ability to tender the amount of the loan.  See Sakugawa v. Countrywide

Bank F.S.B., 769 F. Supp. 2d 1211, 1218–19 (D. Haw. 2011).  Recently, however,

the Ninth Circuit has suggested that a borrower must affirmatively plead an ability

to tender.  See Hogan v. NW Trust Servs., Inc., 441 Fed. Appx. 490, 2011 WL

2601563 (9th Cir. July 1, 2011).[6]  In considering an appeal of judgments

dismissing plaintiffs' actions arising out of foreclosure proceedings, the Hogan

court stated that the "district court properly dismissed appellants' TILA claim

seeking rescission because appellants did not allege the ability to tender the

proceeds of the loan."  Id. (citing Yamamoto, 329 F.3d at 1171).

In light of Hogan, the Court will join the district courts that require

plaintiffs to plead that they are able to tender proceeds of the loan to state a TILA

claim for rescission.  Thus, as Plaintiff has not alleged the ability to return the

amount of the loan, his TILA claim for rescission fails.  The Court therefore

_____

[6] Although Hogan is not published, it was issued after January 1, 2007 and
may be cited pursuant to Federal Rule of Appellate Procedure 32.1(a) and Ninth
Circuit Rule 36-3(b).  See Rule 36-3(b) ("Unpublished dispositions and orders of
this Court issued on or after January 1, 2007 may be cited to the courts of this
circuit in accordance with FRAP 32.1.").

dismisses Plaintiff's TILA rescission claim.  As Plaintiff may be able to amend his

pleading to cure this defect, however, this claim will be dismissed without

prejudice.

Moreover, the Complaint does not allege specific facts that would

suggest TILA violations outside of the loan origination process.  Count 2 alleges

that "Defendants . . . failed to give the required notice in various loan documents

and to have said documents signed by" Plaintiff.  Although the Complaint

mentions certain documents related to the loan origination, which would not apply

to Chase, Count 3 broadly states that Defendants "failed to make the disclosures

required by 15 U.S.C. 1601 et seq. and [12 C.F.R. § 226.18]."  Such broad

allegations do not give Chase fair notice of any alleged wrongs.  Therefore, the

Court finds that as to Chase, Counts 2 and 3 fail to state a claim.

C.     Count 4:  Unfair and Deceptive Acts or Practices

Hawai'i Revised Statutes section 480–2(a) provides that "[u]nfair

methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce are unlawful."  Haw. Rev. Stat. § 480–2(a).  A practice is

unfair when it "offends established public policy and when the practice is immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers."

Balthazar v. Verizon Hawaii, Inc., 123 P.3d 194, 202 (Haw. 2005).  An act is

deceptive when it has "the capacity or tendency to mislead or deceive." Courbat v. Dahana Ranch, Inc., 141 P.3d 427, 434 (Haw. 2006). "Two distinct causes of action have emerged under [section] 480–2(a): (1) claims alleging unfair methods of competition; and (2) claims alleging unfair or deceptive acts or practices." Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 148 P.3d 1179, 1207 (Haw. 2006); see also Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344, 1346 (D. Haw. 1996). HRS § 481A–3 similarly prohibits "deceptive trade practice]."

Section 480-13 provides a private right of action for violations of section 480-2.[7] Haw. Rev. Stat. § 480-13. Section 480-13 of the Hawai'i Revised Statutes "establishes four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant." Davis v. Four Seasons Hotel Ltd., 228 P.3d 303, 335 (Haw. 2010).

---

[7] Specifically, section 480-13(a) provides a cause of action for "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter," and section 480-13(b) provides a cause of action for "[a]ny consumer who is injured by any unfair or deceptive act or practice" in violation of section 480-2. Haw. Rev. Stat. § 480-13(a), (b). The plaintiff may sue for both injunctive relief and damages under sections 480-13(a) and (b). Id.

25

Here, Plaintiff does not identify which wrongful acts or omissions allegedly constitute unfair or deceptive practices, nor does he state who engaged in such practices.  See McHenry, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). There is also no explanation as to the amount of damages or how the action is in the public interest.

Moreover, to the extent that Plaintiff appears to advance a variation of the "show me the note" argument, that argument has been routinely rejected by district courts throughout the Ninth Circuit.  See, e.g., Diessner v. Mortgage Electronic Registration Systems, 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009); Wallis v. Indymac Fed. Bank, 717 F. Supp. 2d 1195, 1200–01 (W.D. Wash. 2010); Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009).[8]  Therefore, insofar as Plaintiff's UDAP claim is based on this argument, the Court concludes that it lacks merit.

---

[8] The following unpublished cases from the District of Hawaii also reject the "show me the note" argument: Krakauer v. IndyMac Mortg. Servs., 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010); Brenner v. Indymac Bank, F.S.B., 2010 WL 4666043, at *7 (D. Haw. Nov. 9, 2010); Angel v. BAC Home Loan Servicing, 2010 WL 4386775, at *10 (D. Haw. Oct. 26, 2010).

D.     Count 5:  Injunctive Relief

Count 5 of the Complaint asserts a claim for injunctive relief to enjoin

Defendants from foreclosing on the Subject Property.  (Compl. ¶¶ 44–45.)

Injunctive relief is a remedy, not an independent cause of action.  See Kendall v.

Visa U.S.A., Inc., 518 F.3d 1042, 1051 (9th Cir. 2008).  It is well-settled that a

claim for "injunctive relief" standing alone is not a cause of action.  See, e.g.,

Henke v. Arco Midcon, LLC, 750 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010)

("Injunctive relief, however, is a remedy, not an independent cause of action.");

Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010)

("A request for injunctive relief by itself does not state a cause of action."); Henke

v. Arco Midcon, L.L.C., 750 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010)

("Injunctive relief, however, is a remedy, not an independent cause of action.").

Injunctive relief may be available if Plaintiff is entitled to such a remedy on an

independent cause of action.

E.     Count 6:  Breach of the Implied Covenant of Good Faith and

Fair Dealing

Count 6 asserts a "Breach of Implied Covenant of Good Faith

Dealing."  (Compl. ¶¶ 46–47.)  Plaintiff claims that Defendants breached the

Mortgage and Note "for reasons incompatible with good faith and fair dealing, . . .

27

a proximate and foreseeable result of which [Plaintiff] suffered damages."  (Id. ¶ 47.)

In Hawaiʻi, commercial contracts are subject to a statutory duty to perform in good faith.  Haw. Rev. Stat. § 490:1–304.  Further, Hawaiʻi law recognizes that "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  Best Place, Inc. v. Penn Am. Ins. Co., 920 P.2d 334, 337–38 (Haw. 1996) (citations omitted).

Plaintiff has not alleged what specific representations, allegedly made by Defendants, violated the implied covenant of good faith and fair dealing.  It is particularly unclear to the Court what actions were taken by Chase in the performance of a contract that breached the covenant of good faith and fair dealing, especially when Plaintiff alleges that Chase has no authority to enforce the provisions of the Mortgage and Note.  Thus, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

F.   Count 7:  Promissory Estoppel

Under Hawaiʻi law, the four elements of promissory estoppel are:

(1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's

promise; and (4) Enforcement of the promise is necessary to avoid injustice. The "essence" of promissory estoppel is "detrimental reliance on a promise."

Gonsalves v. Nissan Motor Corp. in Haw., Ltd., 100 Hawai'i 149, 164–65, 58 P.3d 1196, 1211–12 (2002).  A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  Id. at 165, 58 P.3d at 1212.

Here, Plaintiff alleges that Defendants "deliberately made promises or failed to make appropriate disclosures to [Plaintiff] when they expected that [Plaintiff] would rely on those promises and/or enter into obligations uninformed of necessary disclosures."  (Compl. ¶ 49.)  The Complaint further alleges that Defendants knew that the promises or omissions would create an expectation in [Plaintiff] that he would comply with the terms and conditions under the mortgage loan, and that Plaintiff relied on those promises and omissions.  (Id.)

Plaintiff fails, however, to specify or describe the alleged promise or sufficiently allege how he relied on such promises.  It is particularly unclear to the Court what Chase has promised Plaintiff.  Therefore, Plaintiff's promissory estoppel claim falls short of Rule 12(b)(6).

G.      Count 8: Equitable Estoppel

Count 8 of the Complaint asserts a claim for equitable estoppel.
(Compl.¶¶ 50–51.) Equitable estoppel may be raised under federal and state law
either as an affirmative defense or to prevent another party from raising an
affirmative defense. See, e.g., Fed. R. Civ. P. 8(c); Vidinha v. Miyaki, 112 Hawai'i
336, 145 P.3d 879, 885 (App. 2006).  Plaintiff's claim for equitable estoppel
provides as follows:

> By virtue of their conduct, and in order to prevent injustices from occurring,
> the doctrine and/or principals of equitable estoppel applies and prevents
> Defendants . . . from asserting claims and defenses against [Plaintiff] and/or
> preventing [Plaintiff] from asserting claims and defenses against said
> Defendants concerning the Mortgage and Note and/or subject property.

(Compl. ¶ 51.)  This statement does not adequately elaborate on Plaintiff's claim
for equitable estoppel.  It is unclear to the Court in what context and as to what
claims Plaintiff seeks to utilize the doctrine of equitable estoppel.  Plaintiff fails to
state a claim for Equitable Estoppel.

H.      Count 9:  Intentional Infliction of Emotional Distress ("IIED")

"Under Hawaii law, the elements of IIED are '(1) that the act
allegedly causing the harm was intentional or reckless, (2) that the act was
outrageous, and (3) that the act caused (4) extreme emotional distress to another.'"
Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v.

Univ. of Haw., 73 P.3d 46, 60–61 (Haw. 2003)).  The Hawaii Supreme Court

defines the term outrageous as conduct "'without just cause or excuse and beyond

all bounds of decency.'"  Enoka, 128 P.3d at 872 (quoting Lee v. Aiu, 936 P.2d

655, 670 n. 12 (Haw. 1997)).  "Moreover, 'extreme emotional distress' constitutes,

inter alia, mental suffering, mental anguish, nervous shock, and other 'highly

unpleasant mental reactions.'"  Id. (quoting Hac, 73 P.3d at 60).

Plaintiff fails to allege any facts to support the claim.  Plaintiff's

Complaint simply states conclusory allegations that Defendants' conduct was

willful, that it was known to be likely to cause emotional distress, that it caused

emotional distress, and that the conduct was outrageous.  Without more, Plaintiff

fails to state a claim.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").

Therefore, the Court dismisses all of Plaintiff's claims, with leave to

amend as to the TILA rescission claim and claims based on conduct by Chase

following September 25, 2008.

## CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint.

Notwithstanding Plaintiff's failure to file an Opposition to Chase's Motion, the

Court grants Plaintiff leave to amend his Complaint within 30 days of the filing of this Order to allege any claims based on conduct by Chase following September 25, 2008.  Plaintiff may also reallege his TILA rescission claim.  The Court finds, however, that given the above analysis, granting Plaintiff leave to allege claims for WaMu's conduct prior to September 25, 2008 would be futile.  Therefore, any amended complaint may not include such claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 25, 2012.

_____
David Alan Ezra
United States District Judge

Long v. JP Morgan Chase Bank, et al., Cv. No. 10-00046 DAE/KSC; ORDER (1) DISMISSING COMPLAINT and (2) GRANTING LEAVE TO AMEND

32